UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LISA COX, | § | |
| *Plaintiff*, | § § | |
| v. | § | Civil Action No. SA-21-CV-01051-XR |
| STATE FARM LLOYDS, | § § § | |
| *Defendant.* | § § | |

## ORDER

On this date, the Court considered Defendant's motion for summary judgment (ECF No. 19), Plaintiff's response (ECF No. 22), and Defendant's reply (ECF No. 26), as well as Defendant's motion to exclude the report and opinions of Plaintiff's alleged expert Gary Johnson (ECF No. 20). After careful consideration, the Court issues the following order.

## BACKGROUND[1]

This case arises out of a dispute between Plaintiff Lisa Cox ("Cox") and Defendant State Farm Lloyds ("State Farm") regarding a claim for damage to residential property in Guadalupe County, Texas owned by Plaintiff (the "Property") that was allegedly caused by a freeze on or about February 19, 2021. ECF No. 28 at 2. Plaintiff is the owner of Texas insurance policy 83-ER-S175-6 (hereinafter the "Policy"), which was issued by Defendant. *Id.* Plaintiff submitted a claim to Defendant against the Policy for damages the Property sustained resulting from the freeze. *Id*. On or about March 29, 2021, Cal Spoon, a Public Adjuster retained by Plaintiff, prepared an estimate of the damages. The estimate included a line-item total of $76,522.78, plus

---

[1] These facts are undisputed unless otherwise noted.

1

permit costs ($3,068.51), a PIA fee ($10,228.38), material sales tax ($1,940.30), cleaning material tax ($.075), and storage rental tax ($30.89), for a subtotal of $91,821.61. ECF No. 19-9 at 10. The subtotal plus overhead of $12,238.97, profit of $12,238.97, and cleaning sales tax of $201.71 equaled the replacement cost value and net claim of $116,501.26. *Id*.

Michael Rodriguez, a State Farm employee, prepared an estimate of the damages to Plaintiff's property on or about April 6, 2021, and Mr. Spoon was present during the inspection. Mr. Rodriguez's estimate included a line-item total of $608.67, plus material sales tax ($1.68), for a replacement cost value of $610.35. ECF No. 19-6 at 2. The replacement cost value minus the deductible of $9,895.00 equaled the total replacement cost of -$9,284.65 with the net payment equaling $0.00. ECF No. 19-7 at 2. Defendant State Farm notified Plaintiff on April 20, 2021 that no payment would be made because the estimated loss was less than the deductible. *Id*.

On June 9, 2021, State Farm received a Texas Deceptive Trade Practices Act and Texas Insurance Code demand for $116,501.26 for interior and exterior repairs to the dwelling, repairs to the metal outbuilding, replacement of the pergola, and landscaping costs. ECF No. 19-8 at 2.

On July 20, 2021, State Farm Claim Specialist Adrian Cooksey inspected Plaintiff's residence and found no damage to the interior or to the plywood behind the brick wall, and no water damage or staining to the backing of the drywall. Ms. Cooksey also found no storm-related damages to the metal outbuilding or pergola. ECF No. 19-2 at 3. On August 2, 2021, Ms. Cooksey completed a revised estimate totaling $797.03 to account for additional materials to repair the damaged brick at the front elevation of the home. ECF No. 19-10 at 2. A second denial letter was sent to Plaintiff. ECF No. 19-11. No payment was issued by Defendant State Farm as it concluded that the estimate fell below the deductible. *Id*. To date, Plaintiff and Defendant

continue to disagree about the amount, if any, of payment Plaintiff is entitled to. ECF No. 28 at 3.

Plaintiff filed suit against Defendant in state court on September 22, 2021, alleging that Defendant breached the insurance contract and various extra-contractual duties in the payment and handling of her claims. Defendant removed this case to Federal Court on October 27, 2021. ECF No. 1. Defendant filed its motion for summary judgment on July 19, 2022, seeking dismissal of multiple of Plaintiff's extra-contractual claims. ECF No. 19. Defendant also filed a motion to exclude the report and opinions of Plaintiff's alleged expert, Gary Johnson, on July 19, 2022. ECF No. 20. On August 2, 2022, Plaintiff filed a response to the motion for summary judgment. ECF No. 22. Plaintiff also sought leave to file her first amended complaint on August 2, 2022, which the Court granted, allowing Plaintiff to amend her complaint and take out reference to the Texas Deceptive Trade Practices Act ("DTPA") and common law fraud. ECF Nos. 23, 24. Defendant file a reply in support of its motion for summary judgment on August 9, 2022. ECF Nos. 26. Plaintiff then again sought leave from the Court to file her second amended complaint on August 9, 2022, which the Court granted. ECF Nos. 27, 28. Plaintiff's remaining claims against Defendant are intentional breach of contract, intentional violations of the Texas Insurance Code (Unfair Settlement Practices and Prompt Payment of Claims), and intentional breach of the common law duty of good faith and fair dealing. ECF No. 28 at 7–10.

## DISCUSSION

I. **Defendant's Motion for Summary Judgment**

    A. **Legal Standard**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R.

CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For the Court to conclude that there are no genuine issues of material fact, the Court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

4

(1986). In making this determination, the Court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party, *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

   B. Analysis

Defendant State Farm moved for summary judgment on Plaintiff's extra-contractual claims for violations of Chapter 541 of the Texas Insurance Code, breach of the duty of good faith and fair dealing, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and common law fraud. ECF No. 19. Defendant also seeks summary judgment as to Plaintiff's claims for damages resulting from State Farm's alleged conduct committed knowingly or intentionally under the Texas Insurance Code, including exemplary and treble damages. *Id*. Plaintiff, in her second amended complaint, dropped her claims for violations of the DTPA and common law fraud. ECF No. 28. The Court will therefore construe Defendant's motion for summary judgment as one pertaining to the remaining pending claims of violations of Chapter 541 of the Texas Insurance Code and breach of the duty of good faith and fair dealing.[2] Each claim is discussed in turn below.

   1. **Plaintiff's claim for breach of the common law duty of good faith and fair dealing fails because the evidence merely shows a bona fide coverage dispute.**

"Under Texas law, there is a duty on the part of the insurer to deal fairly and in good faith with an insured in the processing of claims." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*,

---

[2] Plaintiff's claims for breach of contract, violations of Chapter 542 of the Texas Insurance Code, and attorney's fees are not part of Defendant's motion for summary judgment and therefore remain pending.

103 F.3d 456, 459 (5th Cir. 1997) (citing *Arnold v. Nat'l Cty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987), *holding modified on other grounds by Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826 (Tex. 1990)). "To prove that an insurer acted in bad faith in violation of Texas common law, an insured must show that the insurer failed to settle the claim even though it 'knew or should have known that it was reasonably clear that the claim was covered.'" *Lee v. Catlin Specialty Ins. Co.*, 766 F. Supp. 2d 812, 818 (S.D. Tex. 2011) (quoting *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54–55 (Tex. 1997)). "Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith." *Transp. Ins. Co. v. Moriel*, 879 S.W. 2d 10, 17 (Tex. 1994), *superseded by statute on other grounds as recognized in U-Haul Intl. v. Waldrip*, 380 S.W.3d 118, 140 (Tex. 2012).

An insurer may "breach its duty of good faith and fair dealing by failing to reasonably investigate a claim." *Giles*, 950 S.W.2d at 56 n.5. "The scope of the appropriate investigation will vary with the claim's nature and value and the complexity of the factual issues involved." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44–45 (Tex. 1998). "An insurer does not act in bad faith where a reasonable investigation reveals the claim is questionable." *United Servs. Auto. Ass'n v. Croft*, 175 S.W.3d 457, 471 (Tex. App.—Dallas 2005, no pet.).

Plaintiff asserts the same bases for her allegation that State Farm violated the duty of good faith and fair dealing as it does for its claims that State Farm violated Chapter 541 of the Texas Insurance Code. Plaintiff argues that because State Farm "failed to settle her windstorm and freeze damage claim even after the basis for its duty to do so should have been reasonably clear to it" and because it "failed to provide even a plausible explanation for the rejection of such claim" or "perform a reasonable investigation of the claim," these failures not only are actionable

6

under Chapter 541 of the Texas Insurance Code but also support her claim that State Farm violated the duty of good faith and fair dealing. ECF No. 22 at 8.

However, no evidence has been proffered that illustrates that Defendant State Farm conducted an unreasonable or inaccurate investigation. State Farm based its coverage decision relating to the winter storm claim on the recommendations made by Mr. Rodriguez and Ms. Cooksey, the adjusters who handled and investigated Plaintiff's claims on behalf of Defendant State Farm. *See* ECF No. 19-2 at 3. Both of Defendant's adjusters determined the only damage sustained to the Property as a result of the freeze was the broken plumbing line. *Id*. Both of Defendant's adjusters further determined that there were no indications of interior water damage resulting from the broken water line. *Id*. They both also concluded that there was no damage to the pergola or metal outbuilding sustained as a result of the freeze and concluded that the remaining observed damage was not covered under Plaintiff's policy. *Id*.

Plaintiff has introduced no evidence to support the contention that either of Defendant State Farm's adjusters acted unreasonably in conducting their investigations. Finally, Defendant points out, and the Court agrees, that Plaintiff's public adjuster, Mr. Spoon, was present during Mr. Rodriguez's initial inspection of the Property and had the opportunity to point out all damages for evaluation, which further supports the reasonableness of Mr. Rodriguez's investigation. Plaintiff testified that she agreed that her "public adjuster had [her] . . . best interests in assisting [her] with the claim." ECF No. 19-15 at 11. Because the public adjuster was present for at least one of the inspections, and because he had the ability to point out various areas for inspection and evaluation, the Court concludes the investigations were not unreasonable. The summary judgment evidence in the case sufficiently establishes a bona fide coverage dispute, in which both parties disagree about the extent and scope of coverage provided

under Plaintiff's policy, but it does not extend to support the contention that Defendant State Farm's investigation was unreasonable.

Texas courts have consistently held that a bona fide coverage dispute is not evidence of an insurer's unreasonableness; to the contrary, a "bona fide controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim." *Higginbotham*, 103 F.3d at 459. "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that claim is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith." *Id*. (citing *Lyons v. Miller Cas. Ins. Co.*, 855 S.W.2d 597, 600 (Tex. 1993)). A jury determination will resolve the breach of contract claim and the disputed adequacy of State Farm's estimate and payment to Plaintiff, making summary judgment on this extra-contractual claim appropriate.

2. **Plaintiff's extra-contractual claims under Chapter 541 of the Texas Insurance Code fail because they are premised upon the same theory underlying their claim for breach of the duty of good faith and fair dealing.**

   a. **There is no evidence that State Farm violated Section 541.060(a)(2)(A) by denying coverage.**

Plaintiff contends that State Farm failed to pay their claim when its liability under the insurance policy was reasonably clear. To prevail on such a claim, "the insured must establish the absence of a reasonable basis for denying or delaying payment of the claim and that the insurer knew, or should have known, that there was no reasonable basis for denying or delaying payment of the claim." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997) (citing *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex. 1988)). In other words, the insured bears the burden to prove that "there were no facts before the insurer which, if believed, would justify denial of the claim." *Higginbotham*, 103 F.3d at 459 (citing *State Farm Lloyds Inc. v. Polasek*, 847 S.W.3d 279, 284 (Tex. App.—San Antonio 1992, writ denied)).

8

"[T]he issue of bad faith does not focus on whether the claim was valid, but on the reasonableness of the insurer's conduct in rejecting the claim." *Lyons*, 866 S.W.2d at 601. Texas courts have repeatedly held that "evidence showing only a bona fide coverage dispute does not, standing alone, demonstrate bad faith." *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997) (citing *Moriel*, 879 S.W.2d at 17).

Plaintiff claims that Defendant's "unfair settlement practices, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though Defendant's liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance." ECF No. 28 at 8. Plaintiff implies that Defendant State Farm knew or should have known that its liability with respect to the damage was clear after Mr. Spoon prepared his estimate.

However, Plaintiff has only presented evidence that a bona fide coverage dispute exists. As discussed *supra*, there is no evidence proffered that either Mr. Rodriguez's or Ms. Cooksey's estimates were not reasonably prepared and proper. Thus, Defendant State Farm was permitted to rely on those estimates in denying Plaintiff's claim. The undisputed evidence in the record demonstrates that Defendant had a reasonable basis for relying on those estimates, as well as Ms. Cooksey's conclusion that there was no damages in the interior of the home or plywood behind the brick wall, no water damage or staining to the backing of the drywall, and no damages to the metal outbuilding or pergola consistent with the freeze. *See* ECF No. 19-11 at 2–5. Plaintiff has merely pointed to evidence of a bona fide coverage dispute about what damage the Policy covers.

### b. There is no evidence to support Plaintiff's claim that State Farm violated Section 541.060(a)(3) by unreasonably denying her claim.

For the reasons discussed *supra*, a bona fide dispute exists regarding the reasonable basis for the denial of Plaintiff's claim. Texas courts have consistently held that a bona fide coverage dispute is not evidence of an insurer's unreasonableness; to the contrary, a "bona fide controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim." *Higginbotham*, 103 F.3d at 459. "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith." *Id*. (citing *Lyons*, 866 S.W.2d at 600). Plaintiff has offered no evidence to support her contention that Defendant State Farm was unreasonable in denying her claim; indeed, Defendant State Farm relied on the investigation of two adjusters to reach its conclusion that because the estimated loss fell below the deductible, no payment on the claim would be made.

    **c. There is no evidence to support Plaintiff's claim that State Farm failed to affirm or deny coverage within a reasonable time under Section 541.060(a)(4).**

Plaintiff contends that "Defendant's unfair settlement practices, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff[], or to submit a reservation of rights to Plaintiff[], constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance" in violation of Texas Insurance Code Section 541.060(a)(4). ECF No. 28 at 8. Plaintiff, however, has not provided any evidence to support her claim that coverage under the Policy was neither affirmed nor denied within a reasonable time.

The storm took place on or about February 19, 2021 and Plaintiff retained a public adjuster on March 29, 2021. ECF No. 28 at 2. On April 6, 2021, the first State Farm adjuster inspected the property. On July 20, 2021, the property was inspected by State Farm's second

adjuster. Defendant State Farm continued to communicate its findings with Plaintiff throughout the investigation process and continued to update Plaintiff regarding its estimate and the status of Plaintiff's claim. While Plaintiff and Defendant continue to disagree about what amount of payment Plaintiff is entitled to under the Policy, there is no evidence to support her contention that the timeframe of events surrounding this dispute was unreasonable under Section 541.060(a)(4) or that Defendant State Farm did not attempt to effectuate a reasonable settlement of the claim.

      **d. There is no evidence to support Plaintiff's claim that Defendant violated Texas Insurance Code Section 541.060(a)(7) by refusing to pay a claim without reasonable investigation.**

For the reasons discussed *supra*, there is no evidence to support Plaintiff's extra-contractual claim regarding Defendant State Farm's refusal to pay a claim without reasonable investigation. Defendant State Farm inspected the property twice, considered the material that Plaintiff's adjuster, Mr. Spoon, provided, and kept Plaintiff adequately informed throughout the claims process with updates regarding the status of her claim. *See* ECF No. 19-5 at 2; 19-11 at 2. Therefore, the Court grants summary judgment as to Plaintiff's extra-contractual claims.

   **II.**   **Defendant's Motion to Exclude the Report and Opinions of Plaintiff's Alleged Expert Gary Johnson**

   **A. Legal Standard**

Rule 702 of the Federal Rules of Evidence allows a witness "who is qualified as an expert" to testify if:

    a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    b)   the testimony is based on sufficient facts or data;

    c)   the testimony is the product of reliable principles and methods; and

      d)    the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), provides the analytical framework for determining the admissibility of expert testimony. *Daubert* requires the district courts to act as "gatekeepers" to ensure expert testimony meets Rule 702's standards. *Id.* at 589. As a preliminary matter, a district court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting FED. R. EVID. 702). If the expert is qualified, a court must follow *Daubert*'s analytical framework to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.

The reliability inquiry entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can be properly applied to the facts in issue. *Id.* at 592–93. In *Daubert*, the Supreme Court enumerated five nonexclusive factors to consider when assessing reliability: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Id.* at 593–94; *see also Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004). The test for determining reliability is flexible and can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). The point of this inquiry "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in

the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*.

The relevance inquiry requires the Court to determine if expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." FED. R. EVID. 401. Expert testimony in the form of legal opinion invades the province of the Court and does not assist the trier of fact. While an expert opinion "is not objectionable just because it embraces an ultimate issue" to be decided by the trier of fact, FED. R. EVID. 704(a), experts may not offer legal opinions or advise the Court on how the law should be interpreted or applied to the facts in the case. *See Estate of Sowell v. United States*, 198 F.3d 169, 171 (5th Cir. 1999); *see also Askanse v. Fatjo*, 130 F.3d 657, 672–73 (5th Cir. 1997).

A trial court's role as gatekeeper under *Daubert* "is not intended to serve as a replacement for the adversary system." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (citing Rule 702 advisory committee's note). Thus, in determining the admissibility of expert testimony, the court should approach its task "with proper deference to the [factfinder]'s role as the arbiter of disputes between conflicting opinions." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *see also* FED. R. EVID. 104.

B. Analysis

For the reasons that follow, and in light of the Court's ruling on Defendant's motion for summary judgment, the Court holds that Defendant's motion to exclude the report and opinions of Plaintiff's alleged expert, Gary Johnson, is granted.

Plaintiff designated Gary Johnson to "testify about his factual observations, opinions, and conclusions regarding the subject property. The witness also has factual and/or expert knowledge as to the proper means and methods of calculating costs of repairing, replacing, or correcting the damages caused to the property as well as general commercial construction practices and procedures and cost estimation." ECF No. 20-3 at 2. Mr. Johnson was also designated to testify about "general insurance claim practices and procedures and will testify about minimum standards of adjusting in accordance with the Texas Insurance Code and industry standard claims handling procedures and practices." *Id*. Mr. Johnson's deposition was taken on June 21, 2022. ECF No. 20-4. Defendant State Farm timely objected to the testimony and report of Gary Johnson. ECF No. 20.

Mr. Johnson testified in his deposition that Defendant State Farm failed to provide "[a] complete and proper estimate that would put the insured back to whole from the date of the loss." ECF No. 20-4 at 14. He further stated that "the damages that happened to this home [were] covered by that policy and it was reasonably clear per the insurance code that State Farm Lloyds was liable." ECF No. 20-4 at 28. He stated that he did not believe Defendant State Farm conducted a reasonable investigation. *Id.* at 29. He stated that Defendant State Farm did not "make a fair, prompt and equitable settlement of this claim from the damages that [he] saw throughout the claim file." *Id*.

Defendant contends, and the Court agrees, that Mr. Johnson's testimony and report can

be summarized as amounting to a conclusion that Defendant State Farm was unreasonable in handling the claim because not all alleged damages were included in the estimate prepared by the adjuster. However, Mr. Johnson's testimony and report provide no basis for his belief that Defendant State Farm's handling of the claim was unreasonable outside of his belief that "it is apparent to [him] that State Farm Lloyds must have spent an inadequate amount of time inspecting the dwelling damages or intentionally overlooked a multitude of different covered damage[], including repair, slash, replacement to the exterior and interior." *Id*. at 32. When questioned about the factual basis supporting his opinions, in light of the fact that he was not there with the adjusters, did not speak to them, and did not speak to anybody who knew how long they were out there, Mr. Johnson's response was that it was based on his "experience, knowledge, skill, [and] estimate writing . . . ." *Id*.

Mr. Johnson's deposition testimony does not provide any additional support for the opinions stated in his report. His testimony is best summarized as consisting of the conclusion that, based on his experience, Defendant State Farm conducted an unreasonable investigation that led to an incorrect estimate of damages. Mr. Johnson, however, fails to provide any independent, objective support or factual basis for his opinions. Of particular importance is also the Court's holding *supra* that this case consists of a bona fide dispute as to the cost and scope of damages. A jury will not be aided in its assessment of the remaining claims pending in this case for breach of contract and violations of Chapter 542 of the Texas Insurance Code by Mr. Johnson's report and testimony, which seem to purely focus on Defendant State Farm's handling of the claim. For the same reasons as the Court has previously held, Mr. Johnson' opinions and testimony concerning claims handling are not admissible. *See, e.g.*, *Atkinson v. Meridian Sec. Ins. Co.*, No. SA-21-CV-00723-XR, 2022 WL 3655323, at *1 (W.D. Tex. Aug. 24, 2022).

## CONCLUSION

For the foregoing reasons, Defendant's motion to exclude the report and opinions of Plaintiff's alleged expert (ECF No. 20) is **GRANTED** and Defendant's motion for summary judgment (ECF No. 19) is **GRANTED**. Plaintiff's claims for violations of the Texas Insurance Code and for breach of the duty of good faith and fair dealing are **DISMISSED WITH PREJUDICE**. Plaintiff's claims for breach of contract, violations of Chapter 542 of the Texas Insurance Code, and attorney's fees remain pending.

It is so **ORDERED**.

**SIGNED** this 9th day of January, 2023.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE